Thank you, and stay safe and healthy. You too. All right, our third case on the calendar for this morning is Demetrios Pullos v. Sean House v. Akorn, and I need to ask, is Mr. Geiser present? I am, Your Honor. And is Mr. Barron also here? I am, Your Honor. Oh, okay, good. I just wanted to get that confirmation. In that event, we will proceed with argument in these two appeals, 19-2401 and 19-2408. Mr. Geiser. Thank you, Your Honor, and may it please the Court. The District Court invoked its inherent authority to craft its own judge-made adjunct to the existing rules and procedures and compel substantive litigation after the case was moot, the suits were voluntarily dismissed, the Court's jurisdiction had lapsed, and any case or controversy had ceased to exist. That action exceeded the Court's jurisdiction, and even if the Court somehow had jurisdiction, the Court's attempt to rewrite the federal rules on the fly violates the outer bounds of inherent authority. It contradicts the express and implied commands of Rule 41A, Rule 23E, and Rule 11C5, and it exceeds the express authority found in the PSLRA. Inherent authority is designed to be used sparingly. It cannot trench upon the careful, calibrated limits of positive law, and it cannot exercise authority that Congress and the Rules Committee have withdrawn. In this case, Congress and the Rules Committee occupied the field, and there is no room left for the Court. So let me ask you, Mr. Geiser, let me ask you a question of characterization. This case seems to have tried to end with the Rule 41A, A1, capital A dismissal, but looking at the Court's ultimate disposition, there are two ways of thinking about it, and they seem to be blended in some of the briefing here, and I think we need to pull them back apart again. One of them, one way to look at it is as the district court reconsidering whether, if it had any power over that 41A1 cap A dismissal, reconsidering the merits. The judge is saying, well, in Walgreen, you know, you should get rid of cases right away. Maybe there should have been a dismissal for failure to state a claim, even without a motion, kind of a merits-based consideration. The other possible way of looking at it is, as part of the Court's authority to regulate proceedings before itself in a sanctions kind of way, like we're going to sanction you for filing a case that was so lacking in merit that it should never have been filed. But the Court's analysis doesn't really read like a but the power to reconsider something certainly does last beyond the dismissal of a case. The Supreme Court's been very clear about that. So how do you understand the nature of this order that we are being asked to review? Your Honor, we understand it in the formal way, not the latter. I think the Court was clear in saying that what it was doing is by taking a cue from this Court's language in Walgreen, it assumed it had the authority and, in fact, the obligation to look at a case and decide on its own, without a motion to dismiss, whether it should have dismissed that case out of hand. It applied the Walgreen standard, which is one reserved for class settlements. It has nothing to do with evaluating the merits of a complaint, which in any event is usually processed through the federal rules, which are very detailed and careful in how courts are supposed to evaluate a complaint once it's filed. They do not act sua sponte. They wait for an answer, a motion to dismiss, and then possibly discovery, and then possibly a summary judgment motion. So in this case, I take it this case was dismissed under 41A1 before there was even a 12B6 motion filed. Is that correct? That is correct, which is precisely why the Court had no power at that point to do anything else. And what the Court did do, and just to further answer your question, Chief Judge Wood, the Court's analysis did not include at any point anything that hints of sanctions authority. It didn't use the word sanctions. It was applying, again, a heightened standard of review. It didn't ask whether the parties or their counsel had acted in bad faith. It didn't bear any of the hallmarks that one would expect to see if the Court were invoking its sanctions power. And in fact, the plaintiffs below told the Court, because the Court's jurisdiction had lapsed due to the 41 dismissal, if the Court wanted to continue to look at the case, it was obligated to conduct a sanctions analysis. And the Court did not take that invitation. It instead referenced Walgreen and said, if in theory this was frivolous on its face, then it should be dismissed out of hand. Now, by the way, this case obviously wasn't frivolous on its face because it required the Court to bring the parties back after the case was fully resolved out of court. The substantive allegations were mooted. The parties resolved any remaining sliver of dispute over fees in a private contractual settlement out of court. And the judge had to compel the parties to come back and to litigate the underlying merits of the complaint, again, under a standard that really is reserved for evaluating a class settlement, which is heightened because the parties are giving away absent class members' claims. So can I ask you this question? You're not taking the position, I think, although I'm asking you, are you taking the position that district courts have no power at all on their own to look at a complaint that's been filed and to dismiss it as being utterly frivolous, outside, for example, the case of evaluating in form of pauperous litigation or some other special circumstances? Surely you don't mean courts always have to wait for a 12b6 motion. No, we're not saying a categorical rule, but I do think the exception, I want to be very clear about this, is exceedingly narrow. It's when the complaint is so frivolous on its face, it almost, it isn't really a complaint. It's something that anyone who looks at it realizes this isn't even attempting to state a claim. It's almost in sort of the old bell versus hood concept of being so insubstantial and frivolous, there's no need to wait for any further review. But to be very clear, though, that power, although it has existed, it's tailored and narrowed to that context. There is no authority that's expressed in any federal provision of the federal rules of civil procedure that says that courts, when they get any complaint, can simply dismiss it if they disagree with it. Normally what happens is unless it is so patently frivolous on its face, then the court does wait for the adversarial system to kick in, and they rely on defendants to assert their rights. And Congress and the Rules Committee in this particular situation have relied specifically on the defendants to initiate this process. They've armed the sophisticated corporate defendants with very talented and able corporate litigators to look at a complaint, and if it's frivolous, they have every right to file a motion for Rule 11 sanctions. They can move to dismiss the complaint. If they get the complaint dismissed under the PSLRA, the judge is required to conduct a mandatory sanctions review and to see if the complaint satisfied the standards under Rule 11. And then there's a presumption in favor of rewarding the defense counsel's fees if the complaint fails that standard. So Congress and calibrated, detailed scheme in this very setting, aware of the potential for abusive securities litigation and abusive class litigation, and they've created rules and procedures that are designed to ferret out those bad complaints and to compensate the defendants for the cost of defending them. But what doesn't exist is the power that the judge invoked here. And to be very clear, this is not a situation where the court did look at the complaint and say, this is absolutely frivolous on its face. The court looked at it and said, I don't know if this is frivolous or not. It could be a winning lawsuit. It could be, you know, you might prevail if this went to a jury. Let me ask you a different question. Yes, I understand that the judge reviewed all of that. From a technical point of view, there's some footnotes that this appeal concerns only Mr. House, but then Mr. Poulos has a separately docketed appeal. So I wonder if you could tell me about that and also tell me as specifically as possible what you envision the relief being that you're looking for here. Sure, Your Honor. For the first point, I believe the footnotes Your Honor is referring to may be in the intervention appeal. In that case, Mr. Frank only took an appeal from the denial of intervention in the House case. He did not seek relief from the denial of intervention in the Poulos case. In this case, we took the appeal, both Mr. House and Mr. Poulos each filed a separate notice of appeal. The cases were consolidated by this court. So both are before the panel. In terms of the relief that we're seeking, we're seeking to vacate the court's order, which will have the effect of reinstating the private agreement between the parties to settle the fee dispute. Again, this was an order that abrogated a private contractual agreement. It did so without any authority in any federal rule or any statute. It said that because the federal statute on point? Your Honor, that is a federal statute. It is not on point. We addressed this issue in our briefing. If you look to page four and five of our reply brief, it's footnote two. If you look at the specific language of A6, it first is limited to the context where there's been a certified class. It says it's talking about damages awarded to the class. So in this case, where the class's claims are moot, it doesn't apply at all. It also involves the context of courts awarding fees. It doesn't involve a private settlement between parties out of court. So your view is the statute can be avoided by paying fees under the table, as it were. Most awards of fees are in settled cases. But not always. And again, just to finish the answer, under A6, it's very clear that this applies to cases where there's monetary relief. If you look textually at the language, it does not apply. It applies only in the situations where you're looking to whether any damages awarded are reasonable. There are cases like this, disclosure cases, where there are damages there's non-monetary remedies sought by the class and that can be obtained by the class. And in this case, it is a social good to file disclosure claims and to have the material provided to the shareholders before the vote on the merger and thereby avoid damages. And Congress was well aware that their private right of actions enforcing section 14 before they passed the PSLRA, there's no hint that they intended to deprive any award of fees in that context. Let me make sure I understand. I understand the argument. You're saying two things as I understand it. One, that the statute applies not to cases brought as class actions, but to cases certified as class actions. We may have to decide that question. And the other is you're saying that if the agreement between the parties purports to bypass the court instead of running through it, the statute is avoided. Am I right about understanding where you are? Well, in part, Your Honor, and just to be very clear, our first contention is the statute doesn't apply for some of the reasons you stated and for the reason that this only applies in the context of making sure that any fee award, when looked in relation to a damages award, is reasonable. But the second point I'd like to make... That's certainly not what it says. It says no award of fees unless the shareholders benefit. It doesn't say the award of fees must be reasonable in relation to the damages. Well, Your Honor, unless, and I apologize if I'm looking at the wrong provision. I know, that's the problem with things like 78U-4A6. Well, at least we're not in the Romanette categories yet, so that's helpful. But it does say that... Maybe I should have cited 4A-4, too. Well, again, looking at 6, it does say that the fees shall not exceed a reasonable percentage of the amount of any damages... Maybe I should have been citing 4A-4. We'll get the numbers straight. All right, we'll get the numbers straight. And you're down to about a minute, if you'd like to save any rebuttal time. I would, Your Honor. Thank you. All right. Thank you. Mr. Barron. I'm sorry, Your Honor. The corporation has taken no positions throughout these proceedings and did not file a brief. So, are you saying that we do not have a brief or an argument, then, on the other side of this appeal? My understanding is that the proposed intervener below had filed the brief in support of the judgment of the district court. Right. Mr. Frank filed an amicus curiae brief. Mr. Frank, are you here? Maybe my cards are just wrong. Yes, Your Honor. Ted Frank for the amicus in this particular case. We moved for argument, and that motion was denied on November 6th. Right. Okay. Well, in that case, this is closely related to the other appeal, which we will be hearing from you, Mr. Frank. So, I would ask the panel if they have any further questions for Mr. Geiser. And if not, then we will, I think, take this case under advisement and move on to the related, closely related appeal in number four, House against Acorn. Anything further? Any last word, Mr. Geiser? The only thing I'd like to finish with on the A6 issue, Your Honor, is that one reason that parties do settle cases is to avoid litigation over the construction of statutes like this. Potentially, the meeting of A6 could have come up had a fee motion been filed, but the party settled the issue out of court. And usually, when parties do settle disputes out of court and they resolve a case or controversy, that's a good thing, and it's not up to the courts to try to create additional work. So, with that, unless there are further questions, we're happy to submit. All right. I hear none, so we will take this case under advisement.